UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CIVIL ACTION NO. 5:23-CV-00107-GFVT-EBA

MARK SHANNON,                                                                 PLAINTIFF,

V.                              **REPORT AND RECOMMENDATION**

BOURBON COUNTY, *et al.*,                                                     DEFENDANTS.

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court on the Defendants' Motion for Summary Judgment. [R. 52]. Plaintiff Mark Shannon filed a timely response. [R. 54]. By prior Order, Judge Gregory F. Van Tatenhove referred this matter to Magistrate Judge Matthew A. Stinnett and directed him to prepare proposed findings of fact and recommendations on any dispositive motions. [R. 18 at pg. 2]. Judge Stinnett later entered an order of recusal, and this matter was reassigned to the undersigned. [R. 47]. The Court recognizes that Shannon is proceeding *pro se* and construes his pleadings more leniently. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). For the reasons that follow, the undersigned will recommend that the Defendants' motion for summary judgment, [R. 52], be granted in full.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Shannon is an inmate currently confined at the Green River Correctional Complex. [*See* R. 37]. On April 3, 2023, Shannon filed this *pro se* complaint pursuant to 42 U.S.C. § 1983. [*See* R. 1]. Therein, Shannon alleged that while he was incarcerated at the Bourbon Couty Regional Jail (BCRJ) he was subjected to "inhumane treatment." [*Id*. at pg. 3]. Shannon brings this action against Sheriff Tony Asbury, Jailer Wes Burberry, and Jail Administrator Shelia Gant all in their

individual and official capacities. [*Id*. at pgs. 2-3]. Shannon also names Bourbon County, Kentucky as a defendant. [*Id*.].

On January 29, 2023, Shannon was arrested and incarcerated at the BCRJ. [R. 52-1 at pg. 2 (citing R. 52-5)]. Shannon alleges that when he arrived at BCRJ there was black mold and dirty ventilation in his cell. [R. 1 at pg. 3]. Further, Shannon alleges that he experienced other "inhumane" living conditions, such as overcrowded cells, an inoperable toilet, the lack of basic necessities such as clean drinking water and safe food and having rodents and insects in the cells. [R. 1 at pg. 4]. Shannon states that he complained to certain prison staff for two weeks, and after no response on February 27, 2023, Shannon submitted a grievance form on the Kiosk in his cell. [R. 54-1 at pg. 4]. The grievance stated that the cell's shower and bathroom walls are covered in mold and had corroded ventilation. [R. 54-5 at pg. 1]. Lieutenant Amie Kearns responded to the grievance stating that there was no black mold and explained that the Department of Corrections recently visited and confirmed that it was not mold. [*Id*.]. Shannon states that in an attempt to comply with the BCRJ grievance procedure, he asked the staff for appeal forms but was told they had no forms and that all appeals had to be done on the Kiosk. [R. 54-1 at pg. 3]. Shannon then tried to file an appeal, but the Kiosk did not have the proper forms, so the "appeal" was sent as a second grievance form. [*Id*.]. Therein, Shannon made clear that the filing was regarding Kearns' response and stated that the mold was growing on the concrete, and that a professional would confirm. [R. 54-5 at pg. 2]. Lieutenant Kearns responded "APPROVED." [*Id*.].

On March 15, 2023, Shannon was moved from cell 132 to cell 135. [R. 54-1 at pg. 5]. On April 3, 2023, Shannon filed his complaint regarding the alleged living conditions in cell 132. [R. 1]. Therein, all the claims concerned allegations that the Defendants, acting in their individual and official capacities, violated Shannon's rights under § 1983 by acting with deliberate indifference

to the inhumane living conditions at the BCRJ. [R. 1]. At the time of the facts in his complaint, Shannon was a pretrial detainee. [*Id.*].

Following the close of discovery, the Defendants timely filed this motion for summary judgment seeking dismissal of all of Shannon's claims. [R. 52]. Shannon filed a response in opposition, raising various arguments, including that summary judgment is not appropriate because there had not been adequate time for discovery in the case. [R. 54-1 at pg. 9]. Defendants filed a timely reply. [R. 57]. Therefore, this matter is ripe for review.

## SUMMARY JUDGMENT STANDARD

Under Rule 56, "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. FED. R. CIV. P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion." *Celotext Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Such a motion then "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Id*. at 324 (internal quotation marks omitted). This is so because '[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Id*. at 323-24. To avoid summary judgment, the non-movant *must* come forward with evidence on which a jury could reasonably find in its favor, *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986), as courts are not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479-80 (6th Cir. 1989).

A Court should grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter

of law." FED. R. CIV. P. 56(a); *see also Celotex*, 477 U.S. at 324. Courts reviewing motions for summary judgment "must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson*, 477 U.S. at 251-52). "[T]he existence of a mere scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Sutherland v. Mich. Dept. of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003) (citing *Anderson*, 477 U.S. at 251). At this stage, the Court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005)."Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is 'no genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)). In such a case, summary judgment is warranted. *Alabama v. North Carolina*, 560 U.S. 330, 344 (2010); *Celotex,* 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

**ANALYSIS**

### I.   Shannon's Request for Discovery

As a preliminary matter, the Court will address Shannon's argument in his responsive pleading that summary judgment is inappropriate because the Defendants have "refused to fully and fairly participate in the discovery process." [R. 54-1 at pg. 7]. In their motion for summary judgment, Defendants argue that Sheriff Asbury and Jailer Burberry are entitled to summary judgment because the BCRJ is a regional jail operated by the jail administrator and not the sheriff or jailer. [R. 52-1 at pg. 5]. In response to this argument, Shannon states that on July 20, 2024, he

Page **4** of **21**

submitted his first set of Interrogatories to the Defendants, seeking the names of the parties responsible for complying with laws applicable to the BCRJ. [*Id*.]. Further, Shannon argues that because the Defendants have refused to provide certain information including the BCRJ policies and procedures and administrative regulations, the Court should not consider the Defendants' motion until further discovery has been completed. [*Id*. at pg. 9]. Shannon reasons that he needs additional time to explore the identities of the people in charge. [*Id*.].

Under Rule 56, a court may (1) defer considering a motion for summary judgment or deny it, (2) allow additional time for discovery, or (3) issue any other appropriate order "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." FED. R. CIV. P. 56(d). Moreover, Rule 56(d) "offers the Court broad discretion to grant or deny additional time before ruling on summary judgment so long as the decision is not 'arbitrary, unjustifiable, or clearly unreasonable.'" *Baker v. Jordan*, No. 3:18-CV-471, 2021 WL 3782869, at *3 (W.D. Ky. Aug. 25, 2021) (quoting *F.T.C. v. E.M.A. Nationwide, Inc.,* 767 F.3d 611, 623 (6th Cir. 2014)).

Here, Shannon has filed an affidavit attached to his response in opposition to the Defendant's motion for summary judgment, [R. 54-2], but the affidavit fails to state "specified reasons" why he cannot oppose the Defendants' motion for summary judgment, as required by FED. R. CIV. P. 56(d).[1] Therefore, the Court will deny Shannon's request to reopen discovery. [R. 54-1]; *Scadden v. Werner*, 677 Fed.App'x 996, 1000 (6th Cir. 2017) (holding that a Defendant's

---

[1]Shannon argues that the Court cannot consider these documents in ruling on the motion because they are matters outside the pleadings. [R. 54-1 at pg. 8 (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007)]. This argument invokes the motion to dismiss standard, however, which is plainly inapplicable in this case. Instead, under the summary judgment standard, a party can support their assertion by "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A).

"failure to comply with 56(d) is reason enough to conclude that the district court did not abuse its discretion in granting the initial summary judgment motion, or denying his request for reconsideration, without allowing for more discovery.").

Further, "even when a party properly presents a Rule 56(d) affidavit and a motion to extend discovery, the rule only provides that a court "may" extend the discovery deadline." *Scadden*, 677 Fed.App'x at 1000. When a party has complied with procedural requirements, "the Sixth Circuit has provided guidance as to the factors a court should evaluate in considering whether to permit the requested discovery." *Baker*, WL 3782869, at *3 (quoting *Cressend v. Waugh*, No, 2:09-CV-01060, 2011 WL 883059, at *2 (S.D. Ohio Mar. 11, 2011).

> These factors include  (1) when the party seeking discovery learned of the issue that is the subject of the desired discovery; (2) whether the desired discovery would change the ruling; (3) how long the discovery period has lasted; (4) whether the party seeking discovery was dilatory in its discovery efforts; and (5) whether the party moving for summary judgment was responsive to discovery requests.

*Id*. Further, Rule 56(d) "offers the Court broad discretion to grant or deny additional time before ruling on summary judgment so long as its decision is not 'arbitrary, unjustifiable, or clearly unreasonable.'" *Baker*, 2021 WL 3782869, at *2 (quoting *F.T.C*, 767 F.3d at 623).

Here, all of the factors weigh against Shannon. Shannon became aware of the issue by at least July 2024 when he submitted his first set of interrogatories to the Defendants. [R. 54-1 at pg. 7].  Therein, interrogatory number one stated "Please explain in detail the names of the parties to this action that are responsible for adhering to the Kentucky Revised Statutes (KRS 441.045) Public Policy, County Policy, and State Regulations to be followed in the operation of the Bourbon County Regional Detention Center." [*Id*.]. Jail Administrator objected to the Interrogatory on the grounds that it sought a legal conclusion, but she referred Shannon to the BCRJ's policies and procedures and applicable administrative regulations. [R. 57-1 at pg. 2]. Further, in response to

Shannon's request to produce jail regulations, policies, procedures, and inspection reports, Jail Administrator Gant stated she was "not in possession, custody or control of any documents responsive to this Request," and pursuant to FED. R. CIV. P. 34, because she was no longer employed there, she was not required to produce documents held by her former employer. [*Id*. at pg. 14].

Following Jail Administrator Gant's answers and responses, [R. 42], Shannon did nothing to notify the Defendants that he was unsatisfied with the responses or to pursue further discovery. Fact discovery was open for over seven months and closed on April 1, 2025. [R. 33]. Shannon had ample opportunity for further discovery, he just never used it. Because he lacked diligence in pursuing the discovery, he is not entitled to have discovery reopened. *Scadden,* 677 Fed.App'x at 1000. While Shannon did file a motion to compel discovery responses, [R. 40], it was not because the Defendants were withholding discovery. Instead, the Defendants were having trouble tracking Shannon down after his address changed. [R. 41]. Judge Stinnet denied the motion as moot after ensuring Shannon received the responses. [R. 43].

Moreover, the additional discovery would not change the undersigned's recommendation. The Defendants present the Management and Use Agreement in support of their argument that Sherrif Asbury and Jailer Burberry were not in operational control of the BCRJ, and therefore the claims against them should be dismissed. [R. 52-1 at pg. 5]. However, as discussed below, the undersigned will recommend granting summary judgment without reaching the Defendant's control argument. In conclusion, the undersigned will recommend denying Shannon's request to reopen discovery.

## II.    Exhaustion of Administrative Remedies

The Defendants allege that Shannon failed to exhaust his administrative remedies, which as they argue, bars his claims. [R. 52-1 at pg. 6]. However, Shannon claims that he did exhaust all remedies that were made available to him by the BCRJ. [R. 54-1 at pg. 10]. Alternatively, Shannon argues that because the BCRJ would not allow him to fully exhaust his administrative remedies, his claims should not be barred. [*Id*. at pg. 11].

An inmate's failure to exhaust his administrative remedies is an affirmative defense and it is the Defendant's burden to plead and prove by a preponderance of the evidence. *Lamb v. Kendrick*, 52 F.4th 286, 292 (6th Cir. 2002). Under the Prison Litigation Reform Act (PLRA), prisoners may not bring a lawsuit regarding prison conditions until they have "proper[ly] exhaust[ed]" all administrative remedies. 42 U.S.C. § 1997(e)(a); *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). The proper exhaustion of administrative remedies "means using all steps that the agency holds out and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 90 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). Further, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). "A prisoner's lack of compliance may be excused if the administrative remedies are not available, but this court has required a prisoner to make 'affirmative efforts to comply with the administrative procedures before analyzing whether the facility rendered these remedies unavailable.'" *Lee v. Willey*, 789 U.S. F.3d 673, 677 (6th Cir. 2015) (quoting *Napier v. Laurel Cnty.,* 636 F.3d 218, 223 (6th Cir. 2011) (citation omitted) (collecting cases)). When a prisoner tries to comply but falls short the Court analyzes "whether those 'efforts to exhaust were sufficient under the circumstances.'" *Id*. (quoting *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011) (quoting *Napier*, 636 F.3d at 224)).

The BCRJ's grievance process can be summarized in a four-step process: (1) the inmate must orally submit their grievance to the lieutenant; (2) if the inmate is not satisfied, the inmate can request a grievance form or file one on the kiosk system in their cell; (3) if the inmate is unsatisfied with the Captain's response to their grievance, the inmate may submit an appeal in writing to the Chief deputy within twenty-four hours of meeting with the captain; and (4) if still unsatisfied, the inmate may submit an appeal in writing to the jail administrator within twenty-four hours. [R. 54-1 at pg. 11].

In his complaint, Shannon alleges that on February 8, 2023, he was placed in cell 132 which was covered with black mold, had dirty ventilation, overcrowded cells, an inoperable toilet, the lack of basic necessities such as clean drinking water and safe food and had rodents and insects in the cells. [*See* R. 1 at pg. 4]. Shannon states that he immediately addressed the conditions to the Defendants, and after not being satisfied with the response, on February 27, 2023, Shannon submitted a grievance regarding the cell's conditions on the Kiosk:

> I have been housed in a cell that has extremely molded walls and bathroom an[d] shower with Black mold which is very contagious and cause serious respiratory damage direct violation of the 4th amendment of the United States Constitution *see Luster v. St. Clair County Jail*, Case No. 20-CV-00243-JPG and cor[r]o[]ded ve[n]t[i]lation which also is a serious health hazard to our respiratory. The majority of us ha[ve] became ill as a result of the cor[r]o[]ded unit. [T]his grievance is being filed on behalf of each prisoner housed or been housed in cell 132. [I] request that each of us have the necessary testing and treatment to prevent further illness or future respiratory problems, and [r]ecompense each of us in the amount of $1.5 million dollars per prisoner and the ventilation and mold eliminated professionally. [T]his is a class action.

[R. 54-5 at pg. 1]. Within twenty minutes, Shannon received a response to his grievance which read: "[t]hat is not 'black mold' on the walls or the shower in the cell. The department of Corrections was just here a few weeks ago and they have even stated[] in the cell to everyone that it is not black mold. It does not grow on concrete." [*Id.*].

After receiving this response, Shannon asked the staff at the BCRJ for a grievance appeal form, but he was told that all grievances must be done on the Kiosk. [R. 54-1 at pg. 3]. Shannon states he then attempted to file an appeal on the Kiosk, but the Kiosk placed it under a new grievance form. [*See* R. 54-5 at pg. 2]. Therein, Shannon made clear that he was responding to the response he received and explained that there was black mold growing on the paint and that a professional would confirm. [*Id.*]. Shannon received a response from Lieutenant Kearns, saying "APPROVED." [*Id.*]. Shannon argues that he exhausted the administrative remedies because his second grievance was his appeal. However, in the Defendant's view, Shannon never filed an appeal before filing this complaint, and therefore he did not exhaust his administrative remedies.

For Shannon's claims surrounding the black mold and dirty ventilation allegations, there is no dispute among the parties that Shannon completed step one, orally submitting his grievance to the lieutenant, and step two, filing a grievance on the Kiosk, of the BCRJ's grievance process. [*See* R. 52-1; R. 54-1]. Therefore, the question is whether Shannon exhausted his administrative remedies regarding the final two steps of the BCRJ's process. Shannon argues first that he did exhaust his administrative remedies, or in the alternative, that he was not required to because the remedies were made unavailable by (1) the captain not conducting a face-to-face interview, and (2) the BCRJ not providing the necessary forms to complete the grievance procedure. [R. 52-1 at pgs. 10-13].

Shannon's argument that he *did* exhaust his administrative remedies is not supported by the record. First, he argues that the Jail Administrator answered and approved his grievance, satisfying the final step. [*Id.* at pg. 13]. However, Jail Administrator Gant did not answer the grievance in question. [*See* R. 54-5 at pgs. 1-2]. Instead, Gant responded to his later grievances filed after the commission of this lawsuit, which the Court has already stated are not relevant here.

Further, the BCRJ policy clearly states that an inmate shall file an appeal to the Chief Deputy and, if still unsatisfied, an appeal to the Jail Administrator. [R. 17-1 at pgs. 5-6]. Even if the Court were to construe the second grievance form filed on February 27, 2023, as an appeal, it would only satisfy step three of the BCRJ policy. [*Id*.]. Shannon has not alleged or put forth any evidence that he filed a second appeal. Therefore, he did not exhaust his administrative remedies.

Next, the Court turns to Shannon's argument that he was unable to exhaust his administrative remedies because they were not made available to him. Shannon argues that because the captain never did a face-to-face interview following his grievance, he was not required to file an appeal. [R. 54-1 at pg. 12]. Additionally, Shannon argues that the staff told him he was required to file his appeals on the Kiosk, but there was no option for an appeal, making the grievance mechanism futile. [*Id*. at pg. 11]. Exhaustion may be demonstrated by Shannon if he were to prove that the employees at the BCRJ prevented him from complying with the prison grievance procedures, effectively making administrative remedies unavailable. *See Risher*, 639 F.3d at 240. However, the Sixth Circuit still "requires an inmate to make 'affirmative efforts to comply with the administrative procedures,' and analyzes whether those 'efforts to exhaust were sufficient under the circumstances.'" *Id*. (quoting *Napier*, 636 F.3d at 224).

When asked whether he ever submitted an appeal to chief deputy or jail administrator at his deposition, Shannon stated:

> I used -- on the kiosk it has one feature. When you go into the kiosk and you click on to file a grievance, you only got -- like once you file that grievance and they give you an answer, it doesn't have another feature for an appeal process. But however, I did go back into it and explained to them, you know, more in depth about the issue, and we went back and forward. I asked for appeal forms, which their handbook says that they will provide you with, and they don't. So being able to appeal and to exhaust the administrative remedies as required under PLRA, they only have their kiosk set up to where you only have one feature on it. You're not able to go to those next levels. Even if you ask for the forms, they don't give them to you.

[R. 57 at pg. 8].

The Defendants have failed to present evidence to establish that Shannon had the mechanism to file an appeal, either via the Kiosk or through paper forms. The Sixth Circuit Court of Appeals has held that "administrative remedies are not 'available' if prison employees refuse to provide inmates with necessary grievance forms when requested." *Lamb*, 52 F.4th at 297. Moreover, if the officials made step three, filing the first appeal, unavailable, then they likewise made step four, filing a second appeal, unavailable. *See id.* at 298. Defendants have failed to offer any evidence that the Kiosk did provide the appropriate appeal forms, or alternatively that Shannon had another avenue to file an appeal. Taking Shannon's assertions and the statements made in his deposition as true, there is at least a dispute of fact regarding whether the appeal process was made "available" to Shannon, which is enough to survive summary judgment at this stage. *See id.*

Further, Shannon made an affirmative effort to comply with filing an appeal. *See Risher*, 639 F.3d at 240. He attempted to file an appeal per the BCRJ grievance policies. Even after the captain failed to do a face-to-face interview with him, [R. 54-4 at pgs. 4-5], Shannon still attempted to appeal the response by Lieutenant Kearns. [*See* R. 54-5 at pg. 2]. Moreover, the language Shannon used: "this is in regards [t]o your response on the grievance for black mold does not grow on concrete," further evidences his attempt to appeal Lieutenant Kearns' response. [R. 54-5 at pg. 2]. The grievance policy also states that after the first appeal, an inmate can file an appeal to the Jail Administer within twenty-four hours if they are unsatisfied. [R. 54-4 at pg. 5]. However, the only response Shannon received was "APPROVED," giving him nothing to appeal. [R. 54-5 at pg. 2].

Shannon alleges various other conditions at the BCRJ that he describes as "inhumane," such as overcrowded cells, an inoperable toilet, the lack of basic necessities, and having rodents

and insects in his cells. [R. 1 at pg. 4]. The Defendants argue that the remaining claims are barred because Shannon was required to make some affirmative effort to exhaust his administrative remedies, and he did not. *Risher*, 639 F.3d at 240 (quoting *Napier*, 636 F.3d at 224). As discussed above, the BCRJ's exhaustion remedies were futile, and Shannon did sufficiently attempt to exhaust the black mold and dirty ventilation claims. Because Shannon's remaining claims fail as a matter of law, the undersigned will not inquire as to the sufficiency of Shannon's effort to exhaust and will address the claims on the merits.

### III.    Deliberate Indifference Claims

Shannon brings claims against all Defendants under § 1983, arguing that they were deliberately indifferent to the inhumane living conditions at the BCRJ. [*See* R. 1]. Shannon seeks to hold the named Defendants liable in both their individual and official capacities. [*Id.*]. For the following reasons, the undersigned will recommend granting the Defendants' motion in full.

### a.    Individual Capacity

The Defendants argue that the facts do not support Shannon's § 1983 claims of deliberate indifference against Sheriff Asbury, Jailer Burberry, and Jail Administrator Gant. [R. 52-1 at pg. 7-10]. When a pretrial detainee like Shannon asserts a deliberate indifference claim, as opposed to a convicted prisoner, the analysis is made under the Fourteenth Amendment's Due Process Clause instead of the Eight Amendment. *Brawner v. Scott County.,* 14 F.4th 585, 596 (6th Cir. 2021). Under the Eighth Amendment, a detainee must allege facts meeting both objective and subjective elements. *Westmoreland v. Butler Cnty.*, 29 F.4th 721, 728 (6th Cir. 2022). However, under the Fourteenth Amendment, Shannon will "need only make 'an objective showing that an individual defendant acted (or failed to act) deliberately and recklessly.'" *Davis v. Chorak*, No. 22-1839, 2023 WL 2487339, * (6th Cir. Mar. 14, 2023) (quoting *Westmoreland*, 29 F.4th at 728).

For Shannon to successfully state a Fourteenth Amendment claim for conditions of confinement, he "must allege that he was held under conditions which posed an objectively and 'sufficiently serious' threat to his health and safety, and that each defendant acted deliberately and recklessly in the face on an 'unjustifiably high risk of harm.'" *Hall v. Cuyahoga Cnty*, No. 1:23-cv-01710-PAB, 2024 WL 3091069, at *13 (N.D. Ohio June 21, 2024) (first quoting *Brawner*, 14 F.4th 585, 596 (6th Cir. 2021) (citation omitted); and then citing *Helphenstine v. Lewis Cnty.*, 60 F.4th 305, 317 (6th Cir. 2023)). As to the objective element, it is well-established that "the Constitution does not mandate comfortable [jails]." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). "[O]nly allegations of 'extreme deprivations' that deny an inmate 'the minimal civilized measure of life's necessities' are sufficient to state a claim." *Hall*, 2024 WL 3091069 at *13 (quoting *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992)).

Here, Shannon alleges he was subject to "inhumane" conditions, which consisted of the presence of black mold in his cell, dirty ventilation, overcrowded cells, an inoperable toilet, the lack of basic necessities such as clean drinking water and safe food and having rodents and insects in the cells. [*See* R. 1 at pg. 4]. However, Shannon has not alleged any facts to support the conclusion that the conditions posed a serious risk to his health. Shannon alleges that the ventilation "had dust and corrosion and gunk on it probably a quarter thick" and that it would "drip on your bed, on you." [R. 52-7 at pgs. 19-20]. Shannon's claim of dirty ventilation does not create a serious risk to his health. *See Mackey v. Carberry*, No. 2:07-CV-43, 2007 WL 2479296, at *5 (W.D. Mich. Aug 28, 2007) (dismissing claim of poor ventilation in prison and lack of access to proper cleaning supplies). Similarly, Shannon's complaints about overcrowding, inadequate plumbing, and the presence of insects and rodents do create a serious risk to his health. *See Leach v. DeWine*, 3:22-CV-00528, 202 WL 2585484, at *6 (N.D. Ohio Mar. 21, 2023) (Plaintiff's claims

pertaining to dirty doors, inadequate soap, no bacterial soap, inadequate ventilation, and overcrowded cells do not rise to the level of a Constitutional violation.); *see also Taylor v. Luttrell*, No. 06-2522-AN/V, 2008 WL 4065927, at * 9 (W.D. Tenn. Aug. 27, 2008) ("With respect to Plaintiff's claims about the inadequate ventilation in his cell, dust, occasional insects, and various plumbing malfunctions, there is no allegation that Plaintiff suffered more than ordinary discomfort, which does not rise to the level of an Eighth Amendment violation.").

Shannon also makes allegations that there was black mold all over his cell. [*See* R. 1]. It is possible that exposure to black mold might be sufficiently serious to satisfy the objective standard, but Courts in this circuit have held that the mere awareness of black mold is insufficient to state a Constitutional claim. *See Brown v. Penick*, No. 1:22-CV-P99-GNS, 2022 WL 16702802, at *6-7 (W.D. Ky. Nov. 3, 2022); *see also Rogers v. MacClaren*, No. 1:20-CV-263, 2020 WL 3481541 (W.D. Mich. June 26, 2020). While black mold that is airborne and can be inhaled into the lungs may be sufficiently serious for a Constitutional claim, "exposure to black mold through skin contact is a different matter." *Brown*, 2022 WL 16702802 at *7; *see McIntyre v. Phillips*, No. 07-2018, 2008 WL 4585340, at *3 (W.D. Mich. Sept. 10, 2007) (dismissing prisoner action and holding that some exposure to black mold is a risk society has chosen to tolerate). Shannon has not made any allegations that the black mold was airborne. [*See* R. 1; R. 54-7]. Furthermore, while Shannon alleges that the presence of mold caused him to have headaches, nosebleeds and to become itchy, he fails to provide any further explanation or any supporting evidence that could permit the Court to infer that the mold "created a substantial risk to his health." *See Rogers v. Maclaren*, No. 1:20-CV-263, 2020 WL 3481541, at *8 (W.D. Mich. June 26, 2020) ("Here, Plaintiff does not suggest that the mold is airborne, and he does not allege that the presence of mold caused him a health problem or created a substantial risk to his health. As a consequence,

Plaintiff's allegations about the presence of mold do not demonstrate the existence of a sufficiently serious risk to prisoner health." (citing *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987))).

Further, even *if* Shannon had alleged sufficient facts showing that the black mold posed a unjustifiably high risk to his health, the claim will still fail because Shannon has not alleged any facts to indicate that the Defendants acted deliberately or recklessly in the face of that unjustifiably high risk. Shannon alleges that the mold was "so obvious that the Defendant(s) [were] well aware of its presence and should have known about it." [R. 54-1 at pg. 14]. Shannon also states that the Defendants failed to act, and when they did act, they acted "recklessly" such as when they "painted over the mold." [R. 54-1 at pg. 14]. However, according to Shannon's own pleadings, once he notified the Defendants of the black mold in his cell, they moved him to a different cell, negating his argument that they failed to act. [*Id.* at pg. 5; R. 54-7 at pgs. 18-19].

Similarly, while Shannon's allegations that he was denied necessities such as clean drinking water and safe food may be sufficiently serious to satisfy the objective standard, Shannon's claims still fail. The only evidence Shannon brings forward to establish that the Defendants had knowledge of the unsafe drinking water and food is the affidavits attached to his response of fellow inmate at BCRJ, Kenneth Edington. [*See* R. 54-2; R. 54-3]. Edington stated "[t]o my knowledge Mark Shannon complained to every deputy regarding the presence of Black Mold, Dirty Ventilation, unsafe drinking water, Vermin feces in our food, overflowing Sewage, Overcrowding and having to live in each other filth, the health risk that the Inhumane Conditions posed." [R. 54-3 at pg. 2]. Affidavits "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." FED. R. CIV. P. 56(c)(4). Here, Edginton had no personal knowledge of whether the Defendants were aware of the conditions that Shannon complained about. Moreover, Edington

had no personal knowledge, and Shannon has failed to present any other evidence to show the Defendant's acted deliberately or recklessly regarding the harm that may be caused by the unsafe food and water. Therefore, the undersigned recommends that the Defendant's motion for summary judgment be granted regarding Shannon's individual capacity claims.

> b. Supervisor Liability

Shannon also seeks to hold the named defendants liable in their individual capacity under a supervisor liability theory. [*See* R. 1]. "[A] prerequisite of supervisory liability under § 1983 is unconstitutional conduct." *McQueen v. Beecher Cmty. Schs.*, 433 F.3d460, 470 (6th Cir. 2006); s*ee also Hagans v. Franklin Cnty. Sheriff's Office*, 695 F.3d 505, 511 (6th Cir. 2012) (quoting *Szabla v. City of Brooklyn Park*, 486 F.3d 385, 393 (8th Cir. 2007) (en banc)) (A municipality "cannot exhibit fault risking to the level of deliberate indifference to a constitutional right when that right has not yet been clearly established."). As discussed above, the "inhumane conditions" alleged by Shannon does not amount to constitutional rights violations. Therefore, because Shannon has failed to establish a violation of his constitutional rights, the undersigned will recommend granting the Defendants' motion for summary judgment regarding the supervisor liability claims.

Further, even *if* Shannon had alleged a violation of his constitutional rights, his claim based on supervisor liability would still fail. "Because § 1983 liability cannot be imposed under a theory of *respondeat superior*, proof of personal involvement is required for a supervisor to incur personal liability." *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008) (quoting *Miller v. Calhoun Cnty.,* 408 F.3d 803, 817 n. 3 (6th Cir. 2005)). "[A] mere failure to act will not suffice to establish supervisor liability." *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 671 (2009); *see also Essex v. Cnty. of Livingston*, 518 Fed.App'x

351, 335 (6th Cir. 2013) ("There must be some conduct on the supervisor's part to which the plaintiff can point that is directly correlated with the plaintiff's injury.")).

In Shannon's response to the Defendants' motion for summary judgment, he states that he "is seeking to hold Sheriff Asbury, Jailer Burberry, and Jail Administrator Shelia Gant liable based upon their involvement and as supervisors who[] failed to take any action to abate the risk of harm." [R. 54-1 at pg. 17]. However, the Defendants cannot be held liable for a mere failure to act. *See Peatross*, 818 F.3d at 241 (quoting *Iqbal*, 556 U.S. at 676); *see also Essex*, 518 Fed.App'x at 335; *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999) (citing *Leach*, 891 F.2d at 1246) ("Supervisor liability under § 1983 cannot attach where the allegation of liability is based upon a mere failure to act."). The employees must have actively engaged in unconstitutional behavior. *Id*. Yet, Shannon has failed to put forth any evidence to support the argument that the Defendants actively engaged in unconstitutional behavior. Therefore, because the Defendants cannot be held liable under this theory for their mere failure to act, the undersigned will recommend that the Defendants' motion for summary judgment be granted regarding the claims against Sheriff Asbury or Jailer Burberry in their individual capacity. *Id*.

### IV.    *Monell* **Claim**

Finally, Defendants argue that there is no evidence supporting a *Monell* claim for deliberate indifference to the conditions at BCRJ, and therefore the claims against Bourbon County should be dismissed. [R. 52-1 at pgs. 12-13]. Shannon also seeks to hold Sherriff Asbury, Jailer Burberry and Jail Administrator Gant liable in their official capacity. [R. 1 at pg. 3]. "[A]n official capacity claim is merely another name for a claim against the municipality." *Essex*, 518 Fed.App'x at 334 (citing *Cady v. Arenac Cnty.*, 574 F.3d 334, 342 (6th Cir. 2009)).

For Shannon to succeed in a § 1983 claim against Bourbon County and the other named defendants in their official capacity, he must show that the alleged constitutional violation occurred because of Bourbon County's policy or custom. *Monell v. Dept. of Social Services*, 436 U.S. at 694. "A municipality 'may not be sued under § 1983 for an injury inflicted solely by its employees or agents.'" *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (citing *Monell*, 436 U.S. at 694).

There are four options for a plaintiff to prove a municipality's illegal policy or custom. *Thomas*, 398 F.3d at 429. "The plaintiff can look to (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Id.*; *Monell*, 436 U.S. at 694; *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986); *Stemler v. City of Florence*, 126 F.3d 856, 865 (6th Cir. 1997); *Doe v. Claiborne County*, 103 F.3d 495, 507 (6th Cir. 1996). Further, a plaintiff generally cannot show a municipality acted with deliberate indifference without making a showing that the municipality was aware of prior unconstitutional conditions and failed to respond. *Stelmer*, 126 F.3d at 865.

First, as discussed above Shannon has failed to establish unconstitutional conduct. Next, Shannon attempts to establish an illegal policy or custom by alleging that the Defendants had knowledge of prior unconstitutional violations regarding the living conditions at the BCRJ. [R. 54-1 at pgs. 17-18]. However, the only thing Shannon points to is that Jail Administrator Gant received his mold and ventilation grievance in February of 2023 but waited until the fall when Johnson Controls identified a fire safety issue, to take remedial measures. [*Id.*]. This single incident cannot establish a pattern or policy claim. *See Lewis v. City of Cleveland*, No. 1:13-CV-589, 2013 WL 5564146, at *2 (N.D. Ohio Oct. 8, 2013) (dismissing claim because "one isolated incident cannot

be the basis for a pattern or policy claim"). Because Shannon has failed to put forth any other evidence that the Defendants had knowledge of prior unconstitutional violations regarding the living conditions at the BCRJ, this argument fails.

Finally, Shannon makes an argument that he was hindered from responding to this argument because the Defendants failed to provide him with the BCRJ's policies, customs, and regulations. [R. 54-1 at pg. 18]. However, as discussed above, the undersigned does not believe reopening discovery is appropriate. Shannon had ample opportunity during the discovery period to obtain the information he sought. Moreover, because Shannon failed to establish that unconstitutional conduct occurred at the BCRJ, his *Monell* claim fails before an inquiry into Bourbon County's policy and customs is necessary. In conclusion, the undersigned will recommend granting the Defendants' motion for summary judgment on the claims against Bourbon County, Kentucky and the claims against the named defendants in their official capacity.

### CONCLUSION

The Court, having considered the issues and being otherwise sufficiently advised,

**IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment, [R. 52], be **GRANTED**.

*** *** *** ***

The parties are directed to 28 U.S.C. § 636(b)(1) for a review of appeal rights governing this Recommended Disposition. Particularized objections to this Recommended Disposition must be filed within fourteen days from the date of service thereof or further appeal is waived. *United States v. Campbell*, 261 F.3d 628, 632 (6th Cir. 2001); *Thomas v. Ann*, 728 F.2d 813, 815 (6th Cir. 1984). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004); *Miller v.*

*Currie*, 50 F.3d 373, 380 (6th Cir. 1995). A party may file a response to another party's objections within fourteen days after being served with a copy thereof. FED. R. CIV. P. 72(b)(2).

     Signed February 23, 2026.



**Signed By:**

*Edward B. Atkins*   ЄβA

**United States Magistrate Judge**